UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF E. WALKER,<br><br>                              Plaintiff,<br><br>v.<br><br>C/O HURBERT; C/O C. MOORE; SGT. LUNA; LT. ACUNA; C/O LABACA; C/O MURPHY; NURSE DONOHUE; JOHN AND JANES DOES,<br><br>                              Defendant. | Case No.:  3:14-cv-00788-BTM-KSC<br><br>**ORDER GRANTING DEFENDANTS MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**<br><br>**[Doc. No. 51]** |

Jeff E. Walker ("Plaintiff"), is a prisoner currently incarcerated at San Francisco County Jail in San Francisco, California, and is proceeding pro se in this civil action pursuant to 42 U.S.C. § 1983.  Defendants are all correctional and medical care officials employed at Richard J. Donovan Correctional Facility ("RJD") where Plaintiff was incarcerated in 2014.  *See* Doc. No. 1 ("Compl.") at 1-3.

Currently pending before this Court is Defendants'[1] "Notice of Motion and Motion for Summary Judgment for Failure to Exhaust Administrative Remedies" pursuant to

---

[1] On June 19, 2015, this Court granted Plaintiff's request to voluntarily dismiss Defendant Labaco and he is no longer part of this action.  (Doc. No. 73.)

1

Federal Rule of Civil Procedure 56. (Doc. No. 51.)

## I. Procedural History

This matter has a lengthy procedural history and the Court will address only those events that are relevant to the pending motion. Initially, the Court found that Plaintiff was barred from proceeding *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(g). (Doc. No. 10.) However, Plaintiff later filed a motion for reconsideration in which he was able to demonstrate that he was entitled to the "imminent danger exception" of § 1915(g) and the Court granted his request to proceed IFP. (Doc. No. 14.) The Court also screened Plaintiff's Complaint as required by 28 U.S.C. § 1915(e)(2) and § 1915A(b) and found that his Complaint contained allegations sufficient to survive the sua sponte screening process. (*See id.*)

Defendants Donoghue, Hubert, Luna, Moore and Murphy[2] filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 based on Plaintiff's failure to properly exhaust available administrative remedies prior to filing suit, as is required by 42 U.S.C. § 1997e(a). (Doc. No. 51). The Court notified Plaintiff of the requirements for opposing summary judgment, including opposing a summary judgment brought on exhaustion grounds, pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). (Doc. No. 56.)

The dates to file an Opposition and Reply were later extended to allow the parties time to conduct some discovery related to the exhaustion issue. (Doc. No. 72.) Plaintiff filed several motions to compel discovery and other requests that were granted in part, and denied in part. On January 26, 2016, Plaintiff filed another motion for extension of time to respond to Defendants' summary judgment motion which was granted by the Court. (Doc. Nos. 105, 107.) Plaintiff was given until February 26, 2016, to file an opposition to Defendants' motion but that time has since passed and Plaintiff has not filed

---

[2] Defendant Acuna has not appeared in this action and the summons naming Defendant Acuna was returned unexecuted. (Doc. No. 26.)

an opposition.[3]  Therefore, Defendants have not filed a reply.

After careful review of Defendants' Motion, as well as all evidence submitted both by Defendants in support of summary judgment and Plaintiff's submissions, the Court GRANTS Defendants' Motion for Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies for the reasons explained below.

## II.     Plaintiff's Factual Allegations

Plaintiff was housed in the "Crisis Treatment Center," located within RJD, in January of 2014.  (Compl. at 4.)  Plaintiff was placed under "suicide watch" because he was a "danger to himself and possibly others."  (*Id.*)  On January 20, 2014, Plaintiff claims he "woke up after being sexually assaulted" and "in a panic," he "jumped up and asked Clinical Nursing Assistant Reyes" if he had raped him.  (*Id.*)  Because Plaintiff was yelling, he claims Defendants Hubert and Labaco[4] came to the cell and he told Hubert that he "wanted to make a confidential employee sexual misconduct complaint."  (*Id.* at 5.)  Plaintiff also asked Hubert if "he had raped Plaintiff."  (*Id.*)  According to Plaintiff, Hubert "got angry and told Plaintiff to shut the [expletive] up, lay down and stop making noise nobody raped you."  (*Id.*)

Plaintiff claims he notified Hubert of his rights under the Prison Rape Elimination Act ("PREA") and asked Hubert to get a supervisor but Hubert refused.  (*Id.*)  Plaintiff began to yell that Defendant Hubert raped him and claims Hubert, along with Reyes[5] and Labaco, were trying to "cover it up."  (*Id.*)  As Hubert, Reyes and Labaco were laughing, Plaintiff "started kicking cell door yelling for help."  (*Id.*)  Plaintiff alleges that Hubert told Reyes to leave his post, and "standing 6'5" or so big African American football player type build with huge hands and a black ball type cap slung to the side like he was

---

[3] Plaintiff did file yet another request for extension of time to file his opposition on March 8, 2016, several days *after* his opposition was due which the Court denied as Plaintiff has already been given nine months to file an opposition and he failed to show good cause why he should receive any further extensions of time.  (ECF Nos. 110, 111.)
[4] As stated above, Defendant Labaco was dismissed from this action on June 19, 2015.
[5] Reyes is not a named Defendant in this action.

on the streets" opened Plaintiff's cell door and physically assaulted Plaintiff. (*Id.*) He further contends that this physical assault caused "pain and neck whiplash." (*Id.*)

Plaintiff contends that Hubert continued to tell him to "shut the [expletive] up" and claimed Plaintiff just came from the hospital "falsifying rape" and what Plaintiff needs is a "good ass whopping." (*Id.* at 6.) He further claims that Hubert threatened to have him "killed on the yard." (*Id.*) Plaintiff believes this was said to "intimidate, harass and attempt to scare me into leaving it alone." (*Id.*)

Later that night, Plaintiff claims Hubert "yells out loud that [Plaintiff] is a sex offender" and it was heard by other inmates near his cell. (*Id.*) The next morning, Plaintiff notified "John Doe" regarding the alleged rape from the day before and Plaintiff was "sent out on PREA rape exam" to an outside hospital." (*Id.*) Plaintiff alleges Hubert "found out" and assaulted Plaintiff again on January 21, 2014. (*Id.*) Specifically, Plaintiff claims Hubert grabbed Plaintiff and shoved him against a wall while handcuffed. (*Id.*) Plaintiff alleges that he filed an "appeal" on January 22, 2014, which he gave to "Dr. Johnson" regarding the incidents with Hubert. (*Id.* at 7.) When Hubert found out, Plaintiff claims he wrote a rules violation report claiming Plaintiff was "threatening immediate family of peace officer." (*Id.*)

Plaintiff claims that six days before these incidents occurred, on January 16, 2014, he "woke up feeling sexually assaulted" and was unsure if he had been assaulted by the male nurse assigned to Plaintiff's suicide watch. (*Id.* at 9.) Plaintiff claims he told Defendants Moore and Murphy of the alleged assault but they "refused to notify hiring authority or get supervisor." (*Id.*) In response, Plaintiff covered the windows in his cell "to get help." (*Id.*) Defendant Luna came to Plaintiff's cell at which time Plaintiff notified Luna of the "possible rape" and asked for a "confidential interview for complaint." (*Id.*) However, Plaintiff claims he ignored his requests and instead, Moore and Murphy, along with other correctional officers, "opened Plaintiff's cell door and grabbed papers off window." (*Id.*) Plaintiff claims he "panicked" in "fear of people looking at him" and threw feces out of the toilet in his cell at the officers and windows in

his cell. (*Id.*)

Plaintiff claims Moore, Murphy and "other accompanied by Sergeant Luna" entered the cell "with a shield, no camera and assaulted Plaintiff." (*Id.* at 9-10.) Plaintiff alleges Moore hit Plaintiff in his face and Plaintiff was "pushed down to toilet area and staff began to kick and hit parts of body not protected." (*Id.* at 10.) The other correctional officers then took the mattress from Plaintiff's cell, "wiped part of window" and then left the cell. (*Id.*) Plaintiff took more feces and "covered all windows." (*Id.*) Plaintiff then claims he had a panic attack which caused him to fall and hit his head on the floor. (*Id.*)

Dr. Johnson came to Plaintiff's cell and Plaintiff asked him to notify supervisors about what had happened. (*Id.* at 11.) Plaintiff alleges Dr. Johnson "immediately got Plaintiff out of cell" and sent him to an outside hospital for a "PREA" exam. (*Id.*) Plaintiff alleges Moore issued him another rules violation report in retaliation for his claims and attempted to "scare" Plaintiff "into not going forward with complaint filed." (*Id.*)

Two days prior to this incident, on January 14, 2014, Plaintiff claims he was "brought to clinic for 'PREA' evaluation and waiting clearance to be taken to outside hospital." (*Id.* at 12.) Plaintiff alleges that staff members were "told that Plaintiff made 'PREA' rape possible against ad-seg officers and possibly 1:1 male on suicide watch." (*Id.*) As a result, Plaintiff was allegedly harassed by officers which caused him to have chest pains. (*Id.*) Plaintiff claims he "yelled as best he could" to the nurses to alert them of his chest pains but he was ignored. (*Id.*) Even though he began to experience numbness in his legs, his requests for medical attention continued to be ignored. (*Id.*) At some point, Lieutenant Acuna, along with other unnamed correctional officers, came to his cell, dragged him to a wheelchair, threw him in it and "wheeled it outside to a holding case." (*Id.* at 13.) Plaintiff claims these actions were taken in "attempt to cause death in retaliation to 'PREA' rape against fellow officers." (*Id.*)

Finally, Plaintiff alleges Defendant Donoghue, a nurse, failed to provide any

treatment to Plaintiff and told staff that "Plaintiff raped a young girl in Vegas which is false." (*Id*. at 14.) Plaintiff also claims this was in retaliation for the "PREA" claims made against correctional officers. (*Id.*)

### III.  Defendants' Motion

Defendants seek summary judgment on the ground that "Plaintiff failed to exhaust administrative remedies concerning the allegations in the Complaint." *See* Defs.' Mem. of P. & A. in Supp. of Mot. for Summ. J. (Doc. No. 51-1) at 7 (hereafter "Defs.' P&As").

#### A.  Legal Standards

##### 1.  Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'[ ]-rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). *See also Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting *Jones*, 549 U.S. at 218). The Ninth Circuit has consistently held, however, "that the PLRA requires only that a prisoner exhaust available remedies, and that a failure to exhaust a remedy that is effectively unavailable does not bar a claim from being heard in federal court." *McBride v. Lopez*, 791 F.3d

6

3:14-cv-00788-BTM-KSC

1115, 1119 (9th Cir. 2015) (citing *Nunez v. Duncan*, 591 F.3d 1217, 1225-26 (9th Cir. 2010); *Sapp v. Kimbrell*, 623 F.3d 813 823 (9th Cir. 2010); *Albino v. Baca*, 747 F.3d 1162, 1177 (9th Cir. 2014) (en banc), *cert. denied sub nom. Scott v. Albino*, 135 S. Ct. 403 (2014)). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Albino*, 747 F.3d at 1171.

Because the failure to exhaust is an affirmative defense, Defendants bear the burden of raising it and proving its absence. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, Defendants must produce evidence proving the Plaintiff's failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the Plaintiff, shows he failed to exhaust. *Id.*

### 2.     Rule 56 Summary Judgment

Any party may move for summary judgment, and the Court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Washington Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether a fact is disputed or undisputed, must be supported by: (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56 (c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

When Defendants seek summary judgment based on the Plaintiff's failure to exhaust specifically, they must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). If they do, the burden of production then shifts to the Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191; *see also McBride*, 791 F.3d at 1117 (citing "certain limited circumstances where the intervening actions or conduct by prison officials [may] render the inmate grievance procedure unavailable.").

"If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

### 3. CDCR's Exhaustion Requirements

A California prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that [he] can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." Cal. Code Regs., tit. 15 § 3084.1(a). Since January 28, 2011, and during the times alleged in Plaintiff's Complaint, Title 15 of the California Code of Regulations requires three formal levels of appeal review. Thus, in order to properly exhaust, a California prisoner must, within 30 calendar days of the decision or action being appealed, or "upon first having knowledge of the action or decision being appealed," *id.* § 3084.8(b), "use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested." *Id.* § 3084.2(a). The CDCR Form 602 "shall be submitted to the appeals coordinator at the institution." *Id.* § 3084.2(c), § 3084.7(a). If the first level CDCR Form 602 appeal is "denied or not otherwise resolved to the appellant's satisfaction at the first level," *id.* § 3084.7(b), the prisoner must "within 30 calendar days . . . upon receiving

[the] unsatisfactory departmental response," *id.* § 3084.8(b)(3), seek a second level of administrative review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent." *Id.* § 3084.7(b), (d)(2). "The third level is for review of appeals not resolved at the second level." *Id.* § 3084.7(c). "The third level review constitutes the decision of the Secretary of the CDCR on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies," *id.* § 3084.7(d)(3), "unless otherwise stated." *Id.* § 3084.1(b); *see also* CDCR Op. Man. § 541100.13 ("Because the appeal process provides for a systematic review of inmate and parolee grievances and is intended to afford a remedy at each level of review, administrative remedies shall not be considered exhausted until each required level of review has been completed.").

Section 3084.8 further provides that the CDCR's "[t]ime limits for reviewing appeals shall commence upon the date of receipt of the appeal form by the appeals coordinator." Cal. Code Regs.., tit. 15 § 3084.8(a). With some exceptions, "[a]ll appeals shall be responded to and returned to the inmate or parolee by staff," *id.* § 3084.8(c), and first and second level responses are due "within 30 working days from date of receipt by the appeals coordinator." *Id.* § 3084.8(c)(1), (2). Third level responses are due "within 60 working days from the date of receipt by the third level Appeals Chief." *Id.* § 3084.8(c) (3). "'Working day' means a calendar day excluding Saturdays, Sundays, and official state holidays." *Id.* § 4003(j)(2). "Except for the third level, if an exceptional delay prevents completion of the review within specified time limits, the appellant, within the time limits provided in subsection 3084.8(c), shall be provided an explanation of the reasons for the delay and the estimated completion date." *Id.* § 3084.9(e).

/ / /

/ / /

/ / /

### B. Plaintiff's Record of Grievances

In support of their argument that Plaintiff failed to properly exhaust his claims in this action, Defendants supply the declaration of M. Voong, the acting Chief of the Office of Appeals in Sacramento, California, declaration of V. Sosa, Appeals Coordinator at RJD, and declaration of Dr. B. Johnson, Chief Psychiatrist at RJD. (Voong Decl., Doc. No. 51-5; Sosa Decl., Doc. No. 51-4; Johnson Decl., Doc. No. 51-3.)

Defendants argue that Plaintiff is "fully aware of the administrative appeals process as far back as January 2007." Defs.' P&As at 12. In support of this argument, Defendants refer to the Declaration of M. Voong, the Acting Chief of the CDCR's Office of Appeal. (Doc. No. 51-5.) Attached to Voong's declaration is a "Inmate Appeals Tracking System Printout, Level II" that reveals Plaintiff has submitted grievances to the third and final level of review as far back as January 30, 2007. (*See* Voong Decl., Ex. A.) However, Voong's declaration also indicates that after a search for "any and all third-level administrative appeals that this office received from [Plaintiff]" relating to the claims in this action revealed that the "last administrative appeal this Office accepted from [Plaintiff] for third-level review was in November 2013." (*Id.* at ¶¶ 8-9.) This is well before the time frame of the claims raised in this action. Therefore, Defendants argue that while Plaintiff was familiar with, and had used the grievance system in the past, he had not filed any grievance relating to the claims in this action at the third-level or final review.

In Plaintiff's Complaint, which is not verified[6], he claims that Dr. Johnson, a prison psychologist, brought him an administrative grievance form on January 22, 2014. (*See* Compl. at 7.) Plaintiff further alleges that he "filled it out" with regard to the incidents alleged in the Complaint and "turned it in 1-22-14 to Dr. Johnson." *Id.* Defendants have submitted the declaration of Dr. Johnson in response to Plaintiff's

---

[6] A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

claims.  (*See* Johnson Decl., Doc. No. 51-3.)  In this declaration, Dr. Johnson states that he does "remember treating Mr. Walker while he was in the CTC here at RJD in January 2014." (*Id.* at ¶ 4.)  While Dr. Johnson does not specifically recall assisting Plaintiff with an administrative appeal in this timeframe, he does declare that if he did he "would have routed it to the health-care appeals office for processing, regardless of whether it was a health-care appeal or a custody-staff related appeal." (*Id.* at ¶5.)  Dr. Johnson further declares that he "personally contacted the health-care appeals office and inquired whether they had received any administrative appeal from Mr. Walker, completed in January 2014, alleging that he was mistreated by custody staff in January 2014." (*Id.*)  Dr. Johnson was informed that the health-care appeals office had not "received any appeals from Mr. Walker completed in January 2014." (*Id.*)

Plaintiff does attach to his unverified Complaint a CDCR 602 form which appears to be in Plaintiff's handwriting alleging that "in CTC numerous C/Os have threatened my life, used excessive force, sexually harassed, failed to notify sexual assault will tell more on video." (Pl.'s Compl., Exhibit "A," Inmate/Parolee Appeal CDCR 602 dated January 22, 2014.)  There is no indication on this document that it was received, given a log number or processed by anyone at RJD.  This grievance does not name any specific individual whom Plaintiff claims assaulted him.

To the extent that Plaintiff is attempting to argue that the video interviews purportedly made by Defendants following his rape allegations are part of the administrative grievance process, this Court agrees with the findings of Magistrate Judge Karen Crawford in the ruling on Plaintiff's motion to compel exhaustion based discovery. (Doc. No. 81)  Specifically in Plaintiff's motion to compel, he argued that these recordings were related to the exhaustion issue because they are "related to the starting of the appeal process," and they will demonstrate a "conspiracy not to investigate" his allegations. (Doc. No. 69 at 3.)  Magistrate Judge Crawford found that the "video recorded interviews are unrelated to whether or when the plaintiff prepared any administrative appeal paperwork" and they "will not support his argument that he

prepared a timely appeal in January 2014." (Doc. No. 81 at 4.) Moreover, Magistrate Judge Crawford also found that Plaintiff failed to "credibly articulate how the content of the video recorded interviews will show that prison staff lost or misplaced his administrative appeal form." (*Id.*) Like Plaintiff's Complaint, his motion to compel discovery is not verified under penalty of perjury. Thus, the Court finds that there is no evidence in the record to suggest that this video referred to in the grievance attached to Plaintiff's Complaint is related to the issue of whether Plaintiff adequately exhausted his administrative remedies.

There is no dispute among the parties that Plaintiff submitted a grievance on March 2, 2014, while he was housed at the California Health Care Facility ("CHCF") located in Stockton, California, regarding some of the incidents he alleged occurred at RJD in January of 2014. (*See* Sosa Decl., at ¶ 9, Ex. A.) In this grievance, Plaintiff claims that his life would be in danger if he were returned to RJD based on the events that he claims occurred there in January of 2014. (*Id.*) In addition, Plaintiff specifically refers to Defendants Hubert, Moore, Labaco and Correctional Officer Rios[7] in this grievance but none of the other named Defendants. (*Id.*)

It is undisputed that Plaintiff was informed on March 5, 2014, that this appeal was forwarded "on 3-5-14 to the R.J. Donovan (RJD) Correctional Facility Appeals Office for 'Determination of Staff Complaint' due to the alleged Staff members are supervised by the RJD hiring authority." (*Id.*, Ex. B, Letter "Screening at the SECOND Level" dated March 5, 2014.) It is undisputed that this appeal was then "cancelled" pursuant to "California Code of Regulations, Title 15, Section (CCR) 3084(c)(4)" as untimely. (*Id.*, Ex. C, Letter "Screening at the FIRST Level" dated March 10, 2014.) Specifically, in this letter, it is found that the date of occurrences of the alleged events were January 20 and 21, 2014, but Plaintiff did not file a grievance until March 2, 2014, which is past the thirty (30) day limit to file a grievance. (*Id.*, citing Cal. Code Regs., tit. 15 § 3084.8(b).)

---

[7] Correctional Officer Rios is not a named Defendant in this action.

1    Plaintiff then submitted another grievance on April 4, 2014, challenging the
2 rejection of his previous grievance as untimely.  (*Id.*, Ex. D, CDCR 602 Inmate/Parolee
3 Grievance dated Apr. 4, 2014.)  This grievance was accepted at the "Second Level of
4 Review." (*Id.* at ¶ 3.)  On May 5, 2014, Chief Deputy Warden Seibel issued a "Second
5 Level Appeal Response" finding that the rejection of the initial grievance as untimely
6 was "appropriate" and denied Plaintiff's grievance.  (*Id.*, Ex. E, Second Level Appeal
7 Response, Log No. RJD-A-14-01206.)  In this response, Plaintiff was told that "this issue
8 may be submitted to the Director's Level of Review."  (*Id.*)  As stated above, Defendants
9 have submitted evidence to show that Plaintiff did not file an appeal to the Director's
10 Level of Review regarding the issues in this matter.

11    In order to defeat a properly supported motion seeking summary judgment based
12 on a prisoner's failure to exhaust pursuant to 42 U.S.C. § 1997e(a), Plaintiff must "come
13 forward with evidence showing" either that he has properly exhausted all available
14 administrative remedies before filing suit, or that "there is something in his particular
15 case that made the existing and generally available administrative remedies effectively
16 unavailable to him." *Williams*, 775 F.3d at 1191;  *Jones*, 549 U.S. at 218.  Plaintiff did
17 not file an Opposition in this matter, provides no evidence to contradict any of
18 Defendants' showing of non exhaustion and his only claims that he filed a timely
19 grievance are found in his Complaint which is not verified.

20    Based on the record before the Court, the Court finds that Defendants have met
21 "their burden of demonstrating a system of available administrative remedies at the initial
22 step of the *Albino* burden-shifting inquiry." *Williams*, 775 F.3d at 1192.  Defendants have
23 shown that the remedies were available to Plaintiff and they have also shown that
24 Plaintiff failed to properly exhaust his administrative remedies.

25    In *Albino*, it was held that when the burden of proof shifts to the plaintiff, the
26 plaintiff must show that the "local remedies were ineffective, unobtainable, unduly
27 prolonged, inadequate, or obviously futile."  *Albino*, 747 F.3d at 1172 (citation omitted).
28 The evidence in the record does not support a finding that the one rejection of a grievance

1 as untimely, would render the entire grievance process at RJD "ineffective, unobtainable,
2 unduly prolonged, inadequate, or obviously futile." *Id.* The record before the Court
3 shows that Plaintiff did attempt to file a grievance which was rejected as untimely.
4 Moreover, the Defendants note, this grievance did not name all the Defendants which is a
5 requirement under the grievance procedure. *See* Cal. Code Regs., tit. 15 § 3084.2(a)(3)
6 ("The inmate or parolee shall list all staff member(s) involved and shall describe their
7 involvement in the issue.")  Even if the Court were to consider the grievance Plaintiff
8 attached to his Complaint as "Exhibit A" and dated January 22, 2014, this grievance
9 would also not comply with § 3084.2(a)(3) as he does not specifically name any staff
10 member.
11       Defendants are also correct that the grievance filed when Plaintiff was housed at
12 CHCF appears to be untimely.  It is undisputed that Plaintiff filed this grievance on
13 March 2, 2014, regarding the alleged incident on January 20 and 22, 2014.  However, the
14 regulations require that an "inmate or parolee must submit the appeal within 30 calendar
15 days" of the "occurrence of the event or decision being appeal." Cal. Code Regs., tit. 15 §
16 3084.8(b)(1).  Plaintiff's grievance falls outside that thirty day time frame.  Moreover,
17 Plaintiff had the opportunity to appeal the denial or rejection of his grievance to the third
18 and final level of review but there is no evidence in the record to find that he made such
19 an attempt.
20       As stated previously, "[p]roper exhaustion demands compliance with an agency's
21 deadlines and other critical procedural rules[.]" *Woodford*, 548 U.S. at 90. Moreover,
22 because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion
23 requirement by filing an untimely or otherwise procedurally defective administrative
24 grievance or appeal. *See Id.*, at 90-93.
25       Based on the above, the Court finds that Plaintiff has failed to submit evidence
26 sufficient to defeat Defendants' showing that there was an available grievance procedure,
27 Plaintiff was aware of this procedure and Plaintiff failed to follow this procedure.
28 / / /

Therefore, the Court finds that Defendants are entitled to summary judgment based on Plaintiff's failure to exhaust his available administrative remedies before filing this action as required by 42 U.S.C. § 1997e.

## IV.     Unserved Defendant

A review of the Court's docket indicates that Plaintiff has failed to properly serve the only remaining Defendant in this action, Defendant Acuna. *See Walker v. Sumner*, 14 F.3d 1415, 1421-22 (9th Cir. 1994) (where a pro se plaintiff fails to provide the Marshal with sufficient information to effect service, the court's sua sponte dismissal of those unserved defendants is appropriate under Fed. R. Civ. P. 4(m)).  Because Plaintiff has filed to properly serve Defendant Acuna, this Defendant is DISMISSED from this action.

## IV.     Conclusion and Order

Thus, the Court GRANTS Defendants' Motion for Summary Judgment on the ground that Plaintiff failed to properly exhaust his administrative grievances prior to filing this action as required by 42 U.S.C. § 1997e.

The Clerk of Court shall enter judgment for all the Defendants and close the file.

Dated: March 28, 2016

Hon. Barry Ted. Moskowitz, Chief Judge
United States District Court